IN RE PETITION OF J. O. JACOBSON AND OTHERS
FOR DEEPENING, ETC., OF COUNTY DITCH NO. 24,
KANDIYOHI COUNTY.
HARRY E. HAWKINS AND OTHERS v. COUNTY OF
KANDIYOHI.[1]

June 8, 1951.

No. 35,372.

[1]Reported in 48 N. W. (2d) 441.

 

*V. W. Lundquist,* County Attorney, *Gilbert & Floren,* and *Smith, McLean & Peterson,* for appellant.

*L. J. Lauerman, Streissguth, Berens & Rodenberg,* and *Barnard & Berg,* for respondents.

THOMAS GALLAGHER, JUSTICE.

This is an appeal from the district court's order vacating and setting aside an order of the county board of Kandiyohi county establishing county ditch No. 24A. The board's order was made after hearings upon a petition filed pursuant to M. S. A. 106.501 for the improvement, widening, deepening, and extension of county ditch No. 24.

County ditch No. 24 was established in 1906. It was intended to empty into Lake Lillian, a meandered lake. Judicial ditch No. 1 in Kandiyohi and Meeker counties was established in 1908, and since that time county ditch No. 24 actually has had its outlet in branch No. 1 of judicial ditch No. 1 rather than in Lake Lillian. It has drained into Lake Lillian only during the spring high waters.

Proposed county ditch No. 24A, here involved, would also utilize branch No. 1 of judicial ditch No. 1 for its outlet, but at a substantial distance downstream from the present outlet of county ditch No. 24 therein. County ditch No. 24A likewise would drain into Lake Lillian only during the spring high waters. The level of Lake Lillian would be maintained by the construction of a control works adjacent thereto in county ditch No. 24A. To reach the new outlet into branch No. 1 of judicial ditch No. 1, a new ditch

approximately two miles in length would be constructed as part of county ditch No. 24A.

At the hearing in district court, testimony was presented that the described changes would greatly increase the flow of water into judicial ditch No. 1; would result in much additional flooding of the lowlands in the surrounding territory; and would substantially interfere with the level of Lake Lillian. A letter from the state conservation department presented in evidence at the hearing set forth the following:

"There is serious doubt that this drainage system as planned will have an adequate outlet until the South Fork of the Crow River is improved for which reason it is suggested that the construction of this ditch be postponed until a better outlet is available."

The district court, after examining the whole matter and considering the additional evidence submitted at the hearing before it, in substance found:

That a member of the board of county commissioners, John E. Leeberg, who had participated in the preliminary hearing on proposed county ditch No. 24A, was an interested party in the proceedings, since the proposed ditch would by-pass his property, whereas present county ditch No. 24 now cuts through such property;

That no application had been made and no authority granted by the district court for the use of branch No. 1 of judicial ditch No. 1 as an outlet for proposed county ditch No. 24A;

That judicial ditch No. 1 would not provide an adequate outlet for proposed county ditch No. 24A, and that at times when judicial ditch No. 1 would be required to operate at its maximum capacity a large area near its junction with county ditch No. 24A would be flooded;

That proposed county ditch No. 24A would require a flowage of water of at least five feet in depth therein before such waters would drain into Lake Lillian at its present level;

That the proposed plan would result in substantial drainage of Lake Lillian during dry periods, affecting its level; and

That the commissioner of conservation had at no time approved such plan as required by statute.

Based upon such findings, the trial court determined that the order of the county board was arbitrary and beyond the exercise of its reasonable discretion and judgment, unsupported by the evidence, and based upon an erroneous theory of law. It directed that such order be set aside and in all respects vacated. The appeal is from this order of the district court.

■ The record contains ample evidence to sustain the fact findings of the trial court. The board's order contemplates that county ditch No. 24A will have its outlet in lateral No. 1 of judicial ditch No. 1 at a substantial distance from the present outlet of county ditch No. 24, resulting in a far greater flow of water by reason of the wider and deeper dimensions of county ditch No. 24A. The greater flood area resulting therefrom would affect valuable property rights of landowners previously assessed in the construction of judicial ditch No. 1 and not parties to the present proceedings.[2]

Once a ditch system is established, the order creating it constitutes a judgment in rem. The *res* or subject matter of the order is the watercourse and all lands determined to be damaged or benefited by it. Thereafter, every owner of land who has recovered damages or been assessed for benefits has a property right in the maintenance of the ditch in the same condition as it was when originally established. Such a property right cannot be divested or damaged without due process of law. Lupkes v. Town of Clifton, 157 Minn. 493, 196 N. W. 666. See, also, Olson v. County of Roseau, 164 Minn. 452, 205 N. W. 372; Felepe v. Towns of America and Cedarbend, 174 Minn. 317, 219 N. W. 158. A county board cannot damage a landowner's property by damming up the water without

[2]See, Lupkes v. Town of Clifton, 157 Minn. 493, 196 N. W. 666; see, also, Nostdal v. County of Watonwan, 221 Minn. 376, 22 N. W. (2d) 461; Slosser v. G. N. Ry. Co. 218 Minn. 327, 16 N. W. (2d) 47; Felepe v. Towns of America and Cedarbend, 174 Minn. 317, 219 N. W. 158.

acquiring the right to do so. Schussler v. Board of Commrs. 67 Minn. 412, 70 N. W. 6, 39 L. R. A. 75, 64 A. S. R. 424. Neither can it accomplish that purpose by dumping water from a county ditch system into an entirely separate and distinct established ditch system without first acquiring the right to do so. See, Nostdal v. County of Watonwan, 221 Minn. 376, 22 N. W. (2d) 461.

■ Section 106.181 provides that the jurisdiction of the county board in a ditch proceeding shall be limited to the parties and lands included in the engineer's and viewers' reports filed therein. Under this section, a county board lacks authority to make an order affecting persons or properties not within the specified classification. The board here lacked jurisdiction to proceed with the establishment of a ditch which injuriously affected landowners having a vested interest in judicial ditch No. 1. Since the landowners involved in the construction of judicial ditch No. 1 are not parties to the present proceedings and were not designated as affected property owners therein, it must follow that the order of the board here under attack, which affected their vested rights in judicial ditch No. 1 and their properties adjacent thereto, was without authority. Hence, the order was properly vacated by the district court.[3]

■ The same reasoning is applicable insofar as these proceedings relate to the fixed high-water level of Lake Lillian. It is undisputed that the board's order contemplated control of such lake level by the construction of a control works adjacent thereto in proposed county ditch No. 24A. There is evidence to sustain the court's finding that the proposed ditch would substantially affect such level and would result in drainage of the lake during dry periods. Section 106.021, subd. 3, provides:

"* * * no dam affecting public waters shall be constructed, removed or altered, nor shall the level of any public waters be established, raised or lowered, nor shall any public waters be drained in whole or in part without the authority of the commissioner of conservation of the state of Minnesota."

[3]See cases cited in footnote 2, *supra.*

It is undisputed that such an authorization was not obtained here. In the absence thereof, it is clear that the county board was without power to make the order subsequently appealed to, and vacated by, the district court.

■ John Leeberg, a member of the county board, was disclosed to be an interested party in these proceedings. Proposed county ditch No. 24A by-passed his property, whereas the present county ditch No. 24 cuts through a substantial area thereof. Notwithstanding this, he participated in the preliminary proceedings herein before the board. These proceedings, as evidenced by § 106.101, subds. 5 and 6, related to the feasibility and necessity for the proposed improvement, the adequacy of the outlet therefor, and any designated changes deemed advisable therein. The board's findings thereon, as to parties shown by the engineer's and viewers' reports as likely to be affected, are made conclusive by virtue of the statutory sections referred to, as to the nature and extent of the plan, and the need of a preliminary survey. Questions relative to the practicability and necessity of the construction are subject to further investigation, consideration, and determination at the final hearing. Mr. Leeberg absented himself from this final hearing; but, since the preliminary proceedings may have had a substantial effect on later actions taken at the final hearing, it would seem clear that under well-established principles Mr. Leeberg should not have participated in any of the proceedings relative to this project. The facts as outlined would furnish additional support for the order of the trial court vacating the board's order. See, Opinion Attorney General, No. 90b, October 10, 1949, involving this case, and Stahl v. Board of Supervisors, 187 Iowa 1342, 175 N. W. 772, 11 A. L. R. 185; 17 Am. Jur., Drains and Sewers, § 34.

■ The county challenges the right of the trial court to make its order vacating the board's order and asserts that the court should have remanded the matter for further proceedings before the board, including the procurement of the necessary authorization from the district court having jurisdiction of judicial ditch No. 1 and the state conservation commissioner. Section 106.631, subd. 4, which

governs the district court proceedings in matters of this kind, provides:

"* * * If the court finds that the order appealed from is arbitrary, unlawful, or not supported by the evidence, it shall make such order to take the place of the order appealed from as is justified by the record before it or remand such matter to the county board for further proceeding before the board."

The district court's order here merely vacated the county board's order, because, as the court rightly determined, it was beyond the authority of the board and hence unlawful. It did not terminate or dismiss the proceedings before the board nor otherwise act in connection therewith. As to whether, in subsequent proceedings herein, the board may make an order which is supported by the evidence, within its authority and jurisdiction, and hence lawful, of course cannot be determined here.

Affirmed.